UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HOWARD S. ROSENTHAL a/k/a
HOWARD S. ROSE and
ROBERT MORRIS

               Plaintiffs,

    -against-

ROBERT M. DUFF

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

07 Civ. 6228 (RMB)

**ANSWER AND COUNTERCLAIM OF ROBERT M. DUFF**

(Jury Trial Demanded)

      Robert M. Duff ("Duff"), by his attorneys, Krantz & Berman LLP, as and for his Answer to the Complaint filed by Howard S. Rosenthal ("Rosenthal and Robert Morris ("Morris") and as and for his Counterclaims, alleges as follows:

      1.  Admits the factual allegations set forth in Paragraph 1 of the Complaint and respectfully refers all legal determinations and conclusions set forth therein to the Court.

      2.  Lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 2 of the Complaint.

      3.  Lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 3 of the Complaint.

      4.  Admits that Duff is an individual that resides in Florida and denies the remaining allegations in Paragraph 4 of the Complaint.

      5.  Admits that Rosenthal, Morris and Duff entered into a written agreement on April 17, 2006 ("Agreement"), which Agreement set forth in writing certain terms of an existing business relationship among them that had been operating pursuant to an oral

agreement and respectfully refers all legal determinations and conclusions set forth therein to the Court.

6. Admits the allegations in Paragraph 6 of the Complaint.

7. Admits that the Agreement states, in Paragraph 2, that "[t]he collection was officially sold to RMD and HSR, with RMD being the sole signer, having power of attorney to sign for HSR, it is fully understood and agreed that the collection is owned equally between RMD, RM and HSR, all parties having contributed equally in monies paid for the initial down payment of the collection" and respectfully refers the court to the Agreement for its complete terms.

8. Admits that the Agreement states, in Paragraph 3, that "all profits, losses and agreed upon, related expenses are to be shared equally between the three partners and that all three shall be bound by the terms and conditions set forth in the original purchase agreement, signed in Geneva, Switzerland in May 2005" except denies that a copy of the original purchase agreement is annexed to the Complaint as Exhibit B.

9. Admits that the Agreement states, in Paragraph 5, that "the term of this partnership is unlimited, unless dissolved by operation of law, however, upon the sale, settlement and disbursement of funds for the final balance of goods in 'The Collection,' this agreement shall terminate."

10. Admits the allegations in Paragraph 10 of the Complaint except avers that the Partnership sold portions of the Collection in multiple sales over a period of time and avers that although the proceeds of the sale were divided between Rosenthal, Morris and Duff, the proceeds were not equally divided among them, in contravention of the express terms of the partnership agreement.

11. Denies the allegations in Paragraph 11 of the Complaint except admits that certain items in the collection are housed in a warehouse in Switzerland; lacks knowledge and information sufficient to form a belief as to what Morris and Rosenthal would like to do with the Swiss warehouse pieces; and avers that Duff would like to sell the Swiss warehouse pieces.

12. Denies the allegations in Paragraph 12 of the Complaint except admits that certain items in the Collection are in the possession of Duff, having been delivered to him by Rosenthal and Morris, and that the partnership has agreed, in principle, to sell those items to the Houston Museum.

13. Denies the allegations in Paragraph 13 of the Complaint.

14. Denies the allegations in Paragraph 14 of the Complaint except admits that the April 17, 2006 Agreement provides that "all profits, losses and agreed upon related expenses are to be shared equally between the three parties."

15. Denies the allegations in Paragraph 15 of the Complaint.

16. Denies the factual allegations in Paragraph 16 of the Complaint and respectfully refers all legal determinations and conclusions to the Court.

17. Denies the allegations in Paragraph 17 of the Complaint.

18. Admits that Paragraph 18 of the Complaint states "Plaintiff's [sic] demand a trial by jury."

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs fail to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims should be dismissed under the doctrine of laches, waiver, and/or estoppel.

### THIRD AFFIRMATIVE DEFENSE

Any and all damages to Plaintiffs was caused by Plaintiffs' own actions or omissions, or the actions and omissions of individuals over whom Plaintiffs exercise control, including but not limited to, conduct in violation of the covenant of good faith and fair dealing and conduct which constitutes unfair and deceptive business practices.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands and/or the doctrine of in *pari delicto*.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the failure of Plaintiffs to fulfill their obligations under their agreement with Defendant, which preceded and excused any alleged subsequent breach by Defendant.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred in whole or part due to their consent to, and ratification of, Defendant's conduct.

**COUNTERCLAIMS**

**FACTS RELEVANT TO ALL COUNTERCLAIMS**

1. In March 2005, Duff located, in Switzerland, a valuable collection of Pre-Columbian Art (the "Collection"). He negotiated the sale of the Collection and thereafter invited three long-standing friends, Howard Rosenthal, Robert Morris and Kenneth Klassen, to join him in the purchase of the Collection.

2. Pursuant to an agreement dated July 6, 2005, Duff, on behalf of himself, Rosenthal and Arte Primitivo, purchased the Collection consisting of 2500 pieces, the contents of which were described in the July 6, 2005 Purchase Agreement.  Arte Primitivo is the name of an art gallery a/k/a the Howard S. Rose Gallery, owned and operated by Howard Rosenthal.  A copy of the July 6, 2005 Agreement is attached as Exhibit A.

3. Pursuant to the July 6, 2005 Purchase Agreement, the payment for the Collection was to be made in installment payments with 1/3 being paid at the time of signing. Thereafter, Morris paid to Duff and Rosenthal, a proportionate share of the down payment made for the Collection and Duff, Rosenthal and Morris became equal owners of the Collection. For reasons unrelated to the instant action, Klassen was removed from the Partnership following execution of the July 2005 Purchase Agreement.

4. Thereafter, Duff, Morris and Rosenthal entered into an oral Partnership

Agreement to sell the items in the Collection, the terms of which included, among other things, that (a) they were partners in the ownership of the Collection; (b) the Partnership's purpose was the sell the items in the Collection; (c) all profits and expenses of the partnership would be shared equally; (d) all decisions regarding when and where to sell the items, and the private sale or auction prices would be decided by unanimous agreement for items over $5000 in value; and (e) unanimous consent would be necessary for all disbursement of partnership funds (the "Oral Partnership Agreement").

5. Beginning in July 2005, Duff, traveling to Geneva each month on Partnership business, began to export a portion of the items in the Collection from Switzerland to Rosenthal's art gallery, Arte Primitivo, for sale on behalf of the Partnership. Almost from the start, Rosenthal kept poor records of the inventory received and sold, renumbered the inventory without communication to his partners, and, on information and belief, co-mingled partnership funds with funds from the Howard S. Rose Gallery and took partnership proceeds without authority or agreement. To this day, Rosenthal has in his possession and control numerous pieces of the Collection and records of sale, as to which Duff, despite demand, has no information.

6. Beginning in approximately August 2005, the Partnership began to conduct sales and auctions for the items. The first sale was successfully conducted in New York City. Proceeds from this sale, as well as all of the subsequent sales, were deposited into an account controlled exclusively by Rosenthal for the benefit of the Partnership. From time to time, pursuant to discussions among Rosenthal, Morris and Duff, Rosenthal distributed proceeds from this and other sales to himself, Morris and Duff. On information and belief, these distributions were not always equal as between the three partners.

Rosenthal, despite request, has not provided sufficient documentation to Duff to demonstrate otherwise.

7. One of the most valuable single objects in the Collection was a Gold Mask which Rosenthal began efforts to sell in the summer of 2005. Rosenthal and Morris, however, through their conduct in the marketplace with respect to its sale, caused the market to doubt the authenticity of the mask, causing the market value of the Gold Mask to decline precipitously. Rosenthal and Morris refused to make any effort to restore value to the Gold Mask and began a campaign to force Duff, at his expense, to undertake those efforts on behalf of the partnership. Duff has proposed a trip abroad to visit with a mask expert to opine that the Gold Mask is genuine which will assist in reviving the value of the Gold Mask but Rosenthal and Morris have refused to agree to advance expenses for that trip. To date, the parties have been unable to sell the Gold Mask, which remains in the possession and control of Rosenthal.

8. In November 2005, Rosenthal conducted another auction at Arte Primitivo on behalf of the Partnership which yielded sales well below expectation. Disagreements developed among the partners concerning Rosenthal's handling of that auction. In addition, Duff learned that Rosenthal, without consultation with or approval from Morris or Duff, and without their approval was regularly paying himself commissions on the auctions he conducted to sell objects in the Collection.

9. In January of 2006, the parties met in New York to discuss these matters, among others, relating to the Collection and the Partnership. At that meeting the partners memorialized certain terms of their partnership, which terms were set forth in a written agreement dated April 17, 2006, a copy of which is attached as Exhibit A. Long after that

7

meeting, Rosenthal finally agreed to return to the Partnership the commissions he had taken without approval. On information and belief, Rosenthal has not returned fully those commissions to the Partnership.

10. At the January 2006 meeting, Rosenthal, Morris and Duff agreed that each would be equally responsible for approaching and proposing acquisitions of the Collection to various museums. Thereafter, Duff proposed presenting over $700,000 worth of pieces (43 individual pieces) of the Collection to the Houston Museum of Natural Science to which all three agreed. Duff conducted all negotiations and thereafter invited Rosenthal to a meeting with the principle curator of the Museum who agreed to buy 20 pieces of ceramic from the Collection. The Museum's purchase, however, was conditioned upon getting a "license" from the Brazilian Government. Duff has been engaged in efforts to obtain those approvals, which efforts are ongoing. To facilitate that effort, Morris and Rosenthal agreed to send those 20 pieces to Duff's home in Boca Raton where they remain to this day. The remainder of the pieces that were not accepted by the Houston Museum, with a value of more than $400,000, remain in the possession and control of Morris and Rosenthal.

11. During the period of the Partnership, Morris has directed the expense of over $50,000 of partnership assets to restore various items in the collection. Morris has refused to provide an inventory of the repaired items or to provide his partners with a cost/benefit analysis of this restoration endeavor.

12. In the fall of 2006, in response to partnership needs and to enhance the value and condition of textiles in the Collection, Duff washed, conserved and mounted, in frames he purchased on behalf of the Partnership, 113 textile items from the Collection. He

8

delivered those items to Rosenthal at Arte Primitivo in January 2007 for sale in a series of auctions to be conducted on behalf of the Partnership. Duff requested that the Partnership reimburse him for his out-of-pocket expense for the project of approximately $12,750. Rosenthal and Morris have refused to authorize reimbursement to Duff of those expenses. In contrast, Rosenthal and Morris have regularly dispersed Partnership funds to themselves for Partnership-related expenses without consultation with Duff and in direct breach of the Partnership Agreement.

13. Following Duff's delivery of the textiles to Rosenthal, Rosenthal began to sell the textiles at auctions for intentionally below market prices.

14. In addition, Morris, with the acquiescence of Rosenthal, has engaged in a pattern of self-dealing with respect to the assets of the Partnership, including, but not limited to, sales to himself at below market prices, including certain objects in the Collection known as the "Golden Peanuts." After sale to himself at below-market prices, Morris resold the Golden Peanuts in the marketplace at market price and retained the proceeds of those sales for himself.

15. In or about March 2007, Rosenthal and Morris surreptitiously directed the Swiss Warehouse to export large amounts of the remaining inventory to Rosenthal and Morris. By the time these plans were uncovered by Duff, however, Rosenthal and Morris had advised the Swiss Warehouse not to ship as previously directed. Duff, however, wanting to have the goods shipped from Switzerland so that repair and sales could be made, asked the Warehouse to ship those goods to him for repair and sale. When Rosenthal and Morris learned that Duff wanted the goods shipped to him, they ordered the Warehouse not to do so. Recognizing the conflict among the Partners, the Warehouse has taken the

9

position that it will not export any of the remaining items to any of the partners until there is agreement among them as to the disposition. Accordingly, many items still remain in the Swiss Warehouse.

16. Each of the parties control and possess a portion of the unsold Collection with the vast majority of those items controlled by Rosenthal and Morris and housed in Santa Fe, New Mexico and at Arte Primitivo. Specifically, Rosenthal and Morris control, among other items, a) the pieces that were not sold to the Houston Museum with a value of approximately $400,000; b) approximately $400,000 worth of items that are currently on sale in Sante Fe, New Mexico; c) approximately $250,000 worth of restored items; and d) approximately 300-500 other items. The remainder of the Collection, with the exception of the 20 items for sale to the Houston Museum in Duff's possession, is in the Swiss Warehouse and will not be exported until resolution of the present conflict.

17. On information and belief, there are cash assets of more than $200,000 in the Partnership. Duff has demanded the distribution of those assets in accord with the Partnership Agreement but Rosenthal and Morris despite demand, have refused to distribute those cash funds. On information and belief, they are withholding distribution of those funds to frustrate Duff's efforts to properly defend himself in the instant action.

18. In addition, Duff has been denied access to the Partnership books and records and access to the inventory of objects in the collection controlled by Rosenthal and Morris.

**THE PAINTED STONES**

19. On or before August 1, 2005, Morris personally purchased certain ancient painted stones, for his own account, not on behalf of the business venture. He offered to sell a portion of the stones to Duff and Rosenthal and they, based upon Morris's representations

concerning the origin of the stones, agreed to purchase them. Duff and Rosenthal paid Morris $60,000 for the stones in August and September of 2005.

20. Morris sent all the purchased stones to Rosenthal who prepared two of the stones for sale and sold those stones. However, it was not until January 2007, that Rosenthal sent to Duff, three of the remaining stones.

21. After receipt of the stones, Duff became concerned that the representations concerning the stones that had been made to him by Morris were intentionally false.

22. Duff asked Morris to undo the sale and return his payment to him, but he refused.

23. Notwithstanding Morris's refusal, Duff returned the painted stones to Morris and reiterated his request that Morris return his payment. Morris continues to refuse to do so.

### FIRST COUNTERCLAIM AGAINST MORRIS AND ROSENTHAL
### (BREACH OF PARTNERSHIP AGREEMENT)

24. Defendant-Counterclaimant Duff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 23, above.

25. The Partnership Agreement was a fully enforceable legal agreement between the parties.

26. The acts described above, among others, constitute a breach of that contract, including, but not limited to:

    a. taking partnership proceeds without authorization;

    b. excluding Duff from decisions and management relating to the Partnership;

11

    c. making distributions to the partners that were unequal and were made in contravention of the Partnership Agreement;

    d. refusing to make distributions to the partners;

    e. selling items from the Collection at below-market prices without the approval of all partners; and

    f. refusing to reimburse Duff for expenses incurred on behalf of the Partnership.

27. Duff has performed his obligations under the contract.

28. Duff has suffered damages as a result of Rosenthal and Morris's conduct, in an amount to be determined at trial.

### SECOND COUNTERCLAIM AGAINST MORRIS AND ROSENTHAL
### (BREACH OF FIDICUARY DUTY)

29. Defendant-Counterclaimant Duff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 28, above.

30. Pursuant to the Oral Partnership Agreement as well as the written Partnership Agreement entered into on April 17, 2006, Duff, Rosenthal and Morris formed a partnership with all of the attendant obligations and responsibilities among the partners.

31. By accepting and agreeing to be partners, the individual partners, Rosenthal and Morris, owed to Defendant-Counterclaimant Duff the duty of utmost good faith, loyalty and fairness in their mutual dealings, and a fiduciary duty to refrain from taking actions adverse to the partnership.

32. Rosenthal and Morris have breached their fiduciary duty to Defendant-Counterclaimant Duff by, among other things:

    a. co-mingling partnership funds with funds from the Howard S. Rose Gallery;

    b. taking partnership proceeds without authorization from all partners;

    c. keeping inadequate books and records of the Partnership;

    d. refusing to inform Duff of the whereabouts of the items in the Collection;

    e. refusing to provide Duff with information regarding the Collection and the Partnership;

    f. refusing to give Duff access to the books, records and accounts of the Partnership;

    g. excluding Duff from decisions relating to the Partnership;

    h. making and receiving partnership distributions that were unequal;

    i. refusing to make distributions to the Partners;

    j. causing the market to doubt the authenticity of the Gold Mask resulting in a decline of the fair market value of the mask;

    k. selling items from the Collection at below-market prices without the approval of all of the partners;

    l. directing that items in the Collection be shipped to Rose from the Switzerland warehouse;

    m. selling items at below-market prices;

    n. self-dealing; and

    o. refusing to reimburse Duff for expenses incurred on behalf of the Partnership.

33. Upon information and belief, the conduct by Rosenthal and Morris was arbitrary,

capricious, willful and malicious.

34. As a result of this misconduct, Defendant-Counterclaimant Duff has been damaged and is entitled to compensatory damages and punitive damages.

### THIRD COUNTERCLAIM AGAINST MORRIS AND ROSENTHAL (DECLARATORY JUDGMENT REGARDING THE PARTNERSHIP AGREEMENT)

35. Defendant-Counterclaimant Duff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 34, above.

36. Defendant-Counterclaimant Duff is entitled to share in the profits, assets, and accounts of the business of the Partnership consistent with the Partnership Agreement.

37. Defendant-Counterclaimant Duff has fulfilled his duties and obligations to the Partnership.

38. Defendant-Counterclaimant Duff seeks declaratory relief that he is entitled to an equal 1/3 share of the profits, accounts and assets of the Partnership.

### FOURTH COUNTERCLAIM AGAINST ROSENTHAL AND MORRIS (UNJUST ENRICHMENT)

39. Defendant-Counterclaimant Duff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 38.

40. Rosenthal and Morris, in breach of their fiduciary duty to the Partnership and Defendant-Counterclaimant Duff, have unjustly enriched themselves by, among other things, wrongfully diverting Partnership assets to themselves as improper compensation for work they performed on behalf of the Partnership.

41. Morris, in breach of this fiduciary duty to the Partnership and Defendant-

Counterclaimant Duff has unjustly enriched himself by, among other things, wrongfully diverting Partnership assets to himself by engaging in self-dealing and selling items of the Collection at below-market value, reselling those items, and retaining the profits for himself.

42. Through these acts, among others, Rosenthal and Morris have been and will be unjustly enriched to their benefit and to the detriment of Defendant-Counterclaimant Duff, and it would be unjust for Rosenthal and Morris to retain such benefits.

## FIFTH COUNTERCLAIM AGAINST ROSENTHAL AND MORRIS (ACCOUNTING, INJUNCTION AND RECEIVER)

43. Defendant-Counterclaimant Duff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 42, above.

44. The Plaintiffs, Rosenthal and Morris, have been and are in complete and Exclusive possession and control of the books, records, and accounts related to the operation and management of the Partnership.

45. Defendant-Counterclaimant Duff has asked repeatedly to have access to those books, records and accounts, but such access has been refused.

46. Defendant-Counterclaimant Duff is entitled to such access, as well as an accounting of all of the activities, transactions, expenditures, receipts, assets and liabilities of the Partnership

47. Plaintiffs Rosenthal and Morris have refused to distribute assets and monies belonging to the Partnership

48. As a result of this misconduct, the exact amount of damages to Duff proximately

15

caused by the Plaintiff's wrongful and improper conduct cannot be determined with accuracy, and Duff has no adequate remedy at law.

49. Defendant-Counterclaimant Duff seeks equitable relief from the Court, including but not limited to, an order from this Court directing the Plaintiffs to provide Duff with a full and complete accounting of all of the activities of the Partnership, and a copy of all relevant documents, and the appointment of a receiver to complete the dissolution of the Partnership and fairly administer and distribute its assets.

### SIXTH COUNTERCLAIM AGAINST ROSENTHAL AND MORRIS
### (CONVERSION)

50. Defendant-Counterclaimant Duff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 49.

51. Plaintiffs have exercised dominion and control over property owned by the Partnership and in which Duff has rights. Duff has objected to that possession, dominion and control and has sought an inventory of such items. Plaintiffs have refused to relinquish control over those assets.

52. By reason of foregoing, Plaintiffs have converted assets belonging, at least in part, to Duff.

### SEVENTH COUNTERCLAIM AGAINST ROSENTHAL
### (CONVERSION)

53. Defendant-Counterclaimant Duff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 52.

54. Plaintiff Rosenthal made unauthorized payments to himself and for commissions"

on the auction sale of certain items of the Collection. Duff and Morris demanded the return of those "commissions." Rosenthal agreed to return those "commissions" but has not yet returned all of those Partnership funds.

55. By reason of the foregoing, Plaintiff Rosenthal has converted assets belonging, at least in part, to Duff.

56. As a result of the foregoing, Duff has been damaged in an amount that cannot be ascertained until a full accounting is done, but believed to be in excess of $10,000.

### EIGHTH COUNTERCLAIM AGAINST MORRIS
### (FRAUD)

57. Defendant-Counterclaimant Duff repeats reiterates and realleges each and every allegation contained in paragraphs 1 through 56.

58. Plaintiff Morris acted in bad-faith, with willful fraud, and intentionally misrepresented material facts regarding the Painted Stones he sold to Duff.

59. Duff relied to his detriment on those material, and intentionally false representations and purchased the stones from Morris.

60. Due to the material misrepresentations by Morris, Duff entered into the transaction to purchase the Painted Stones which he would not have done had he known the true facts regarding the Painted Stones.

60. As a result of Morris's conduct, Duff has been damaged in an amount in excess of at least $20,000, the full amount to be determined at trial.

**WHEREFORE**, Defendant-Counterclaimant Duff respectfully requests that the Court:

a. Dismiss Plaintiffs' Complaint with prejudice, and award judgment to Defendant;

b. Grant judgment to Defendant on its counterclaims including monetary relief in an amount to be determined at trial;

c. Dissolve the partnership;

d. Order that an accounting be had of all of the affairs of the partnership and the predecessor venture between the partners, including but not limited to, the assets, property, monies, accounts, books and records, and good will of the partnership;

e. Order that an accounting be had of all of the monies received by Rosenthal and Morris from the Partnership, since the inception of the partnership up to and including the present time;

f. Order that a receiver of the property, rights, assets and good will of the partnership be appointed with all the usual powers to dispose of the property, rights, assets and good will, to collect debts due to the partnership and to pay all just debts and liabilities of the partnership and the expenses, legal fees, and costs of this action;

g. Order that Plaintiffs Morris and/or Rosenthal be enjoined during the pendency of this action and permanently from disposing of any of the assets of the Partnership now in his hands or possession or control, and from interfering with the business of the Partnership, or otherwise injuring or destroying the assets thereof, or the reputation of those assets in the marketplace;

h. Award Defendant such other and further relief as the Court deems just and proper.

Dated: August 8, 2007
      New York, New York

                                **KRANTZ & BERMAN LLP**

                                By:    Marjorie E. Berman (MB-8993)

                                747 Third Avenue
                                32nd Floor
                                New York, New York 10017
                                212-661-0009

                                Attorneys for Robert Duff